Repka v Arctic Cat, Inc. (2004 NY Slip Op 50205(U))

[*1]

Repka v Arctic Cat, Inc.

2004 NY Slip Op 50205(U)

Decided on February 27, 2004

Supreme Court, Erie County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 27, 2004

Supreme Court, Erie County,
 MARK C. REPKA, Plaintiff,
against
ARCTIC CAT, INC., f/k/a ARCTCO, INC., ARCTIC SALES, INC. and K.L. SALES AND SERVICE, INC., Defendants.
Index No. 199711117

Joseph Manna, Esq.,
Gresens & Gillen, LLP, 510 Fleet Building, 12 Fountain Plaza, Buffalo, New York 14202-2222, Attorney for Plaintiff Mark C. Repka
Thomas Speyer, Esq.
Chelus, Herdzik, Speyer, Monte & Pajak, P.C., 1560 Statler Towers, Buffalo, New York 14202, Attorney for Defendants Arctic Cat, Inc., f/k/a Arcto, Inc., Arctic Sales, Inc.
Kenneth R. Kirby, Esq.
Napier, Fitzgerald & Kirby, 509 Liberty Building, 420 Main Street,Buffalo, New York 14202, Attorney for Defendant K.L. Sales and Service, Inc.

Donna M. Siwek, J.
Pending are Defendants Arctic Cat, Inc. f/k/a Arcto, Inc., Arctic Sales, Inc. ("Arctic Cat") and K.L. Sales and Service, Inc.'s ("K.L. Sales") motions for summary judgment pursuant to CPLR 3212, dismissing Plaintiff's complaint. Plaintiff, Mark C. Repka ("Repka") opposes each motion. The Complaint sets forth four causes of action, the first two sound in negligence, the third in products liability, and the fourth for breach of warranty.
Facts
In October, 1994, Repka purchased a new 1994 Arctic Cat Thundercat snowmobile from K.L. Sales. Repka and his friend, Ron Dake went to K.L. Sales in October, 1994 to look for a snowmobile. Dake was an experienced rider and suggested Repka go to K.L. Sales for an Arctic Cat, as he had purchased one there. The Arctic Cat Thundercat 900 is a high end, high-performance snowmobile. Repka asked K.L. Sales' operator Louis Zona about some of the snowmobile's capabilities and power. Zona asked Repka if he had ever ridden a snowmobile before; Repka indicated that he had. Zona had no recollection of discussing the installation of track studs on Repka's snowmobile, nor could he recall if Repka inquired about studs. Repka maintains he asked Zona about studs and that Zona told him he did not need them, but if he wanted them after trying it out, he could bring it back and Zona would install them. On the topic [*2]of track studs, Dake had them on his "sled" and liked them, but testified that Repka said he was going to wait and ride it to see if they were necessary. Dake had no recollection of a conversation between Repka and Zona relative to studs.
At the time the snowmobile was delivered, Repka was provided with an operator's manual and a safety manual. (See Lenhard Exhibits "O" and "P".) The snowmobile itself had two decal warnings (See Lenhard Exhibits "Q" and "R.") Repka acknowledged receipt of the owner's manual and safety manual, but only recalls having read the operator's manual. Repka's snowmobile was sold without track studs (carbide wear bars are standard equipment on the Thundercat.)[FN1]
On January 7, 1995, between 9:00 and 10:00 a.m., the Plaintiff was riding with a group of five other snowmobilers; they stopped at the Sad Dog Saloon, and the Glen Rock Inn. After leaving the Glen Rock Inn, the snowmobiling party traveled along trails and roads, with Repka in the lead. They turned onto Sodom Road, in the Town of Wethersfield, Wyoming County, whereupon another member of the group, Larry Rosler, took the lead.
As Repka approached a curve on Sodom Road, he noticed a darkness ahead of him. He did not recognize the darkness as a curve; he vaguely recalled a curve warning sign ahead of him.[FN2] He applied his brakes lightly at first, and the snowmobile slowed down slightly and remained on a straight path. He pumped the brakes three times thereafter, each time the snowmobile slowed slightly and remained on a straight path. He applied the brakes a fourth time and attempted to turn the snowmobile and claims its rear end swung to his right while the snowmobile continued straight, and left the road, crashing into the woods off the shoulder of the road. Police photographs of the tracks suggest the snowmobile remained on a straight path and did not swing to the right.
Although the source of the information is not documented, the ambulance report notes the Plaintiff's speed at 60 mph, however, at his deposition, Repka had no recollection of his exact speed, only that it was at least 45 mph; an accident report completed by his mother reports a speed of 50 mph. As he proceeded along Sodom Road, the speedometer read 45 miles per hour. Dake was traveling 50 mph, 100 feet behind Repka on an unstudded snowmobile, and saw him drive straight off the road and into a ditch and tree. He did not see the Plaintiff's snowmobile swing to the right.
The Defendants note that Sodom Road is not a snowmobile trail, and snowmobile travel is not legal on the road. (See Affidavit of Ronald Hermann, Sr.) New York State Trooper John R. Neeley investigated the accident and concluded that the cause of the accident was operator [*3]speed and inexperience.
I.ARCTIC CAT'S MOTION
A.Strict Products Liability Claim
Arctic Cat's primary argument in support of the motion is that the accident was caused by inattention and improper operation rather than a design defect, negligence, breach of warranty or failure to warn. Arctic Cat frames the Plaintiff's claims against it as the failure to install track studs and aggressive carbide wear bars (or "skags") on the snowmobile. The manufacturer relies on the affidavit of Richard Hermance, an accident reconstructionist and expert in snowmobile safety, who avers that carbide wear bars are standard equipment on the Thundercat. Hermance also opines that track studs are not industry standard, but constitute a personal preference item, which are banned in several states. Therefore, it is not feasible for track studs to be standard on every snowmobile sold in the United States.
Rather, Mr. Hermance notes that the industry standard is to design the skis, wear bars and track to be in a generally neutral condition, thereby permitting the consumer's preference to dictate whether they will add track studs and/or increase the wear bars. The Defendants assert that while the Thundercat did not have track studs, it met the industry standard with sufficient carbide wear bars to turn and control the snowmobile.
Mr. Hermance's affidavit explains "the usage of track studs will provide additional acceleration and deceleration capabilities on icy surfaces, and most surfaces where the rubber lugs of a non-studded track do not dig in and grip the surface. However, track studs must be balanced with the proper amount of traction on the skis of the snowmobile, and most commonly the wear bars on the skis. If track studs are added to a snowmobile without additional carbide wear bars, the snowmobile may tend to travel straight, and be difficult to turn. If no track studs or few track studs are added, but the wear bars on the skis are increased, the increased traction on the front of the snowmobile can cause a snowmobile to spin out on a curve." (See Hermance Aff. at ¶ 18.) Hermance concludes that the Thundercat operated as designed at the time of the accident, and was free from design and manufacturing defects.
Mr. Hermance opines that, had Repka been "properly vigilant and perceived the curve when it was able to be seen, he would have been able to safely bring his snowmobile to a stop from 50 miles per hour without leaving the roadway." (See Hermance Aff. at ¶ 15.) Hermance identifies the cause of the accident as Repka's "failure to operate his snowmobile at a safe speed or in a manner whereby he could maintain control of the snowmobile under normal and expected conditions." (See Hermance Aff. at ¶ 16.)
Arctic Cat further argues that there is no physical evidence to support Repka's claim that the rear-end of the snowmobile swung out and cite the cause of the accident as inattention in operation of the recently-purchased snowmobile at an unreasonable speed for the conditions, and ignoring the curve sign on the route which Repka had traversed 2 days before.
[*4]
B.Failure to Warn Claim
The Defendants also attack Plaintiff's claim that he was not adequately warned of the inherent dangers of operating a snowmobile, and assert his claim is barred by the doctrine of primary assumption of risk, which eliminates Arctic Cat's duty to the Plaintiff to protect him from risks inherent in snowmobiling. Morgan v. State, 90 NY2d 471 (1997) (plaintiff assumed commonly appreciated risks inherent in and arising out of the nature of the sport, bobsledding); Hofflich v. Mendell, 235 AD2d 784 (3d Dept. 1997) (alpine tower risks perfectly obvious); Weaver v. Trackey, 272 AD2d 705 (3d Dept. 2000) (plaintiff assumed risks of operating waverunner); Liccione v. Gearing, 252 AD2d 956 (4th Dept. 1998) (plaintiff was of sufficient age, education and experience to assume the risks of jumping on a trampoline). Defendants argue that Repka voluntarily assumed the inherent risks of snowmobiling, including losing control of the snowmobile, leaving the roadway and collisions.
With respect to the warnings, Arctic Cat claims that Repka cannot establish inadequacies of the warnings provided, and the warnings the Plaintiff would have heeded had they been provided. Arctic Cat cites the safety manual and decal warnings that traveling at excessive speeds could cause severe injury or death for the proposition that Repka was warned against the mechanism of his injury. As a novice snowmobiler, Repka was expected to travel with an abundance of caution and to respect the speed and capabilities of the snowmobile. Rather, he purchased "the largest and fastest snowmobile," aware that track studs were available as an option, but proceeded to drive at excessive speeds on an unfamiliar route at the time of the accident. Despite the fact that Repka received information regarding the installation of track studs, and additional carbide wear bars as optional equipment, he "chose to ignore" that information. (See Affidavit of Matthew A. Lenhard, Esq. at ¶ 67.) "Regardless of what information was contained within the safety and operator's manuals, it is clear that Repka was aware of the availability of track studs at the time of his purchase, as he discussed track studs with the snowmobile dealer by his own admission." Id.
Finally, the Defendants argue that Repka's negligent and reckless operation of the snowmobile and disregard for the warnings were superceding, intervening causes of the accident. Arctic Cat argues it had no duty not to sell its products to Plaintiff simply because it felt that he was too inexperienced. Sabbatino v. Rosin & Sons, 253 AD2d 417 (2d Dept. 1998).
II.K.L. SALES AND SERVICE MOTION
K.L. Sales mirrors the arguments made by Arctic Cat. Louis Zona, K.L. Sales' representative, gave testimony on the topic of studs, which he defined as a preference item for the rider, useful on icy, hilly conditions. Mr. Zona testified that studs do not assist in turning.
K.L. argues that it was not legally obligated to reiterate the warnings and cautions set forth in the Arctic Cat manuals (one of which Repka did not read). K.L. reiterates Arctic Cat's argument that Repka has failed to establish the inadequacies of the warnings provided and further, what warnings he would have heeded, had they been provided. K.L. adopts Arctic Cat's argument that it did not have a duty to protect Repka from the dangers inherent in snowmobiling. [*5]See Morgan.
K.L. Sales also urges us to reject Repka's argument that, had he been adequately warned as to the dangerous high performance characteristics for a novice operator, he would have insisted on the installation of traction devices (or opted to purchase a smaller, more controllable snowmobile). Repka was well aware of the size, power and speed of the Thundercat, but opted to buy it anyway. Moreover, there is little evidence to support an argument claim that Repka presented himself to Zona as a novice.
K.L. Sales asserts further that it had no affirmative duty to inquire about the Plaintiff's experience and/or skill level at the time of purchase, inasmuch as the safety and operating manuals contained adequate warnings and/or instructions. K.L. Sales argues that liability cannot attach to it because the Plaintiff elected to purchase and take delivery of the high-performance snowmobile with standard equipment.
In support of its motion, K.L. Sales relies on Plaintiff's testimony as to the happening of the accident and the failure to discern the curve and darkness. By the time Repka realized there was a curve, and applied his brake for the first time, he was to the far right of the road, virtually off the road, and onto the narrow shoulder. Thus, the high-performance aspect of the snowmobile was not a proximate cause of the accident, rather, Repka simply "missed" the curve, and did not have any opportunity to make the turn and stay on the road. See Morgan.
III.PLAINTIFF'S OPPOSITION
Repka asserts that primary assumption of risk is not a defense to a products liability claim, and that Arctic Cat enhanced the risk of snowmobiling by designing a snowmobile with inadequate or unreasonably dangerous traction, and by misleading the customer into believing that there were no personal safety risks associated with riding the Thundercat on hard-packed ice and snow. With respect to these "enhanced risks," Repka claims that he did not assume them. Factually, Repka denies that he was trying to stop at the time of the accident, rather, he claims he was trying to turn at the curve.
Plaintiff enumerates several questions of fact which he claims preclude summary judgment, namely: (1) whether the snowmobile was defective because it lacked properly installed carbide wear bars; (2) whether the snowmobile was defectively designed because Arctic Cat admitted a problem with the rear of the machine acting like it wanted to come around and pass in the front (See Performance Manual, Exhibit B to Manna Affidavit.); (3) whether Arctic Cat's remedy (adding studs in the center belt) would have prevented the accident; (4) whether Arctic Cat was negligent in failing to install carbide wear bars at the factory, by designing a snowmobile with inadequate traction, by failing to test alternative designs, by failing to warn the Plaintiff of the sliding out, and by failing to provide proper information to consumers relative to the purchase of safety equipment; (5) whether the snowmobile was defective because it lacked proper warnings, including lack of traction and control.
[*6]
Plaintiff submits the Affidavit of Raymond Rieli, P.E., who opines that the Thundercat is unreasonably dangerous because on hard-packed snow and ice-covered terrain, the rear can slide out and act like it wants to come around to pass the front, and because of poor traction of the rubber lugs which have difficulty penetrating the hard-packed snow and ice, thereby making the snowmobile unstable. Thus, Plaintiffs argue that the snowmobile is unreasonably dangerous to operate on reasonably-foreseeable hard-packed icy, snowy terrain. Mr. Rieli cites the Thundercat safety manual, which recommends traction aids to be added on hard-packed snow and ice (versus "normal conditions").
Rieli answers the Defendants' attack on the physical evidence and the manner in which the accident happened with an opinion that the physical evidence is consistent with the snowmobile back swinging out. According to Rieli, a snowmobile with inadequate traction capabilities on hard snow and ice should be sold with track studs and carbide wear bars. Based upon his testing, he concludes that had the snowmobile been balanced with carbide wear bars and studs, it would not have lost control through the turn.
In further opposition to the motions, Plaintiff submits the Affidavit of Kenneth R. Laughery, a human factors and warnings expert, who criticizes the decal warnings on the snowmobile, the performance manual and the safety manual. Laughery claims that the decal warning that the snowmobile should not be operated by a novice or inexperienced rider is not appropriate, because it leaves it to the customer to determine whether he is novice or inexperienced, in contravention of proper consumer warnings practice. Laughery also addresses studs, and finds that Arctic Cat failed to provide adequate information to the purchaser in order for them to make an informed decision relative to studs and traction aids. Although Arctic Cat claims that installation of studs is a consumer preference item, it concedes that it may be necessary to correct certain handling problems, without any indication as to what studs or traction aids are. Laughery notes that the performance manual (which addresses the issue of the rear of the machine acting like it wants to come around and pass the front) is not given at the time of purchase, thus the consumer is unaware that adding studs to the center track would remedy the problem. Further, the Plaintiff argues there should be a specific warning for riding on hard-packed snow and ice in the safety manual.
With respect to his claims against K.L. Sales, the Plaintiff submits an affidavit relative to his conversations with Louis Zona, and claims that he asked Zona if he could put studs in the track, but that Zona told him he did not need them, that he could take the snowmobile out a few times, and bring it back if he thought it needed studs. Repka asserts that, based upon this representation, he did not insist on studs, as he believed Zona, an authorized Arctic Cat dealer, knew more than he did. Repka further denies that anyone at K.L. Sales or Arctic Cat told him the rear might come around to pass the front of the snowmobile. He claims that, if he had been so advised, he would have installed track studs.
Discussion
We first address Plaintiff's products liability claim. The Court agrees with Plaintiff that [*7]primary assumption of risk cannot constitute a defense to a strict products liability claim. Lamey v. Foley, 188 AD2d 157 (4th Dept. 1993). However, Plaintiff's negligence claims may be considered in light of this defense. With respect to those claims, the Court agrees with the Defendants that the Plaintiff assumed the risks inherent in snowmobiling, and that therefore the doctrine of primary assumption of risk operates to bar Plaintiff's negligence claims. See Morgan v. State, 90 NY2d 471 (1997); Painter v. Peek 'n Peak Recreation, Inc., 2 AD3d 1289 (4th Dept. 2003). Therefore, the Defendants' motions for summary judgment on Plaintiff's negligence causes of action are granted.
We now address Plaintiff's products liability claim based upon manufacturing defect, design defect and failure to warn. The Plaintiff asserts a manufacturing defect, and relies upon his deposition testimony that there were no wear bars on the Thundercat. However, there is no proof in admissible form to refute the Hermance Affidavit, which asserts that the snowmobile had carbide wear bars, which were standard equipment at the time of purchase, and which were balanced for an unstudded track. We note that Mr. Rieli's affidavit is silent on the Plaintiff's manufacturing defect claim. Therefore, Plaintiff's products liability claim based upon a manufacturing defect is dismissed, and the Defendants' motion for summary judgment granted to that extent. Liccione v. Gearing, 252 AD2d 956 (4th Dept. 1998).
With respect to Repka's design defect claim, namely that the snowmobile was unreasonably dangerous to operate on hard-packed snow and ice, we note that the Defendants met their initial burden of showing that the snowmobile was not defectively designed, and that it met industry standards at the time of manufacture, and was reasonably safe for its intended use. Robinson v. Reed Prentice, 49 NY2d 471 (1980); Lamey, supra.; Voss v. Black & Decker, 59 NY2d 102 (1983). The Hermance Affidavit establishes that track studs are a personal preference item, and that they are banned in several jurisdictions. However, the Rieli affidavit refutes much of Hermance Affidavit on this subject. Because conflicting expert opinions may not be resolved on a motion for summary judgment, and we must deny Defendants' motions with respect to Plaintiff's design defect claims. Bieman v. Thurn, 295 AD2d 970 (4th Dept. 2002); Williams v. Lucianatelli, 259 AD2d 1003 (4th Dept. 1999).
In order to prevail on his failure to warn claim, the Plaintiff must establish that he was inadequately warned of dangers known to the manufacturer. Further, the Plaintiff must prove causation, i.e. "that if adequate warnings of adequate prominence had been provided, the product would not have been misused." Johnson v. Johnson Chemical, 183 AD2d 64, 70 (2d Dept. 1992); PJI Comment 2:135, Page 644; Banks v. Makita, 226 AD2d 659 (2d Dept. 1996); Morrow v. Mackler Productions, Inc., 240 AD2d 176 (1st Dept. 1997). There is no dispute that Repka was provided a safety handbook and operator's manual, and that the snowmobile was outfitted with several warning decals. Significantly, Plaintiff's expert relies on a section of the safety manual relative to traction aids, however, Plaintiff admittedly did not read that manual.
Thus, we agree that Plaintiff's failure to heed the warnings that were given were causative of the accident and we decline to hold the Defendants responsible for failing to protect the [*8]Plaintiff from himself. Sabbatino, supra. Weaver v. Trackey, 272 AD2d 705 (3rd Dept. 2000); Liccione, supra. Therefore, Defendants' motions to dismiss Plaintiff's failure to warn claim are granted.
With respect to the claims against K.L. Sales, the proof in the record before the Court establishes that Plaintiff presented himself to Mr. Zona as a purchaser familiar with and knowledgeable about snowmobiles, who selected the high-performance Thundercat model, and who inquired as to the use of track studs. Further, Plaintiff does not dispute that he did not read the safety manual delivered at the time of purchase. Despite Plaintiff's arguments, neither Defendant had a duty to inquire as to the Plaintiff's experience or skill level in operating snowmobiles. Sabbatino, supra. Even assuming that a duty to warn or inquire could be imputed to K.L. Sales, the snowmobile had manuals with pertinent warnings, so as to relieve K.L. of any responsibility therefor. Abramowitz v. Maghsoudlou, 295 AD2d 548 (2nd Dept. 2002).
Therefore, for all of the foregoing reasons, Defendants' motions for summary judgment dismissing Plaintiff's negligence, failure to warn and manufacturing defect claims are granted. Defendants' motions for summary judgment seeking dismissal of Plaintiff's products liability claims based upon design defect and breach of warranty are denied, without costs to any party.
This is the Decision of this Court. Submit order on notice.
 
Hon Donna M. Siwek
Justice of the Supreme Court
Decision Date: February 27, 2004
Footnotes

Footnote 1:Plaintiff cites his deposition testimony and argues that there were no wear bars on the snowmobile and therefore a manufacturing defect.

Footnote 2:Ronald Dake testified Repka snomobiled around the same curve days before the accident.