Leslie N. LUX and Richard Christopher Lux, Plaintiffs,

v.

Barbara COX, et al., Defendants.

No. 96–CV–495A.

United States District Court, W.D. New York.

Sept. 23, 1998.

94

Gregory P. Krull, Magner & Love, P.C., Buffalo, New York, for plaintiffs.

Dale A. Ehman, Bouvier, O'Connor, Buffalo, New York, for defendant Barbara Cox.

Lynda M. Tarantino, Saperston & Day, P.C., Buffalo, New York, for defendants Daniel Petchell, Porsche Club of America Niagara Region, Inc., Porsche Club of America, Inc. and Watkins Glen International, Inc.

Nelson E. Schule, O'Shea, Reynolds & Cummings, Buffalo, New York, for defendant Mullane Auto Center, Inc. d/b/a Mullane Mitsubishi.

John M. Socolow, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for defendants Mitsubishi Motor Sales of America, Inc., and Mitsubishi Motors America, Inc.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1), on December 2, 1996. Defendants Cox, Petchell, Porsche Clubs, and Watkins Glen moved for summary judgment based on a waiver that plaintiff Lux signed. All defendants moved for summary judgment based on plaintiff's assumption of the risk. On May 19, 1998, Magistrate Judge Heckman filed a Report and Recommendation recommending that the Court grant summary judgment in favor of defendants Cox, Petchell, Porsche Clubs, and Watkins Glen based on the waiver, and that the Court deny summary judgment for defendants Mullane Mitsubishi ("Mullane") and Mitsubishi Motor Sales of America and Mitsubishi Motors America ("Mitsubishi"). Plaintiff filed objections to that part of the Report and Recommendation granting summary judgment in favor of defendants Cox, Petchell, Porsche Clubs, and Watkins Glen. Defendants Mullane and Mitsubishi objected to that part of the Report and Recommendation denying them summary judgment. Oral argument on the objections was held on August 21, 1998.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

██ The Court writes separately, addressing one of several objections raised by the parties, to note its agreement with Magistrate Judge Heckman's finding that plaintiff was not a "user" of the racetrack as that

term is used in § 5–326.[1] The Court notes that throughout these proceedings, much emphasis has been placed on cases analyzing the application of § 5–326 to situations in which injuries have occurred at racetracks. *See, e.g., Owen v. R.J.S. Safety Equipment, Inc.,* 79 N.Y.2d 967, 582 N.Y.S.2d 998, 591 N.E.2d 1184 (N.Y.1992); *Gilkeson v. Five Mile Point Speedway, Inc.,* 232 A.D.2d 960, 648 N.Y.S.2d 844 (App.Div.1996); *Smith v. Lebanon Valley Auto Racing, Inc.,* 167 A.D.2d 779, 563 N.Y.S.2d 335 (App.Div.1990). These cases, however, do not provide the best analogies to the present case, counterintuitive though this may seem, as the racetrack cases deal mostly either with spectators at racetracks, *see, e.g., Gilkeson, supra; Gaskey v. Vollertsen,* 110 A.D.2d 1066, 488 N.Y.S.2d 922 (App.Div.1985), or persons working on a pit crew, *see, e.g., Lago v. Krollage,* 157 A.D.2d 49, 554 N.Y.S.2d 633 (App.Div.1990), *aff'd on other grounds,* 78 N.Y.2d 95, 571 N.Y.S.2d 689, 575 N.E.2d 107 (N.Y.1991); *Smith, supra.* It appears to the Court that the most analogous cases to the present one are *Baschuk v. Diver's Way Scuba, Inc.,* 209 A.D.2d 369, 618 N.Y.S.2d 428 (App.Div.1994), and *Castellanos v. Nassau/Suffolk Dek Hockey, Inc.,* 232 A.D.2d 354, 648 N.Y.S.2d 143 (App.Div.1996).

The plaintiffs in those cases are more like the plaintiff in this case than are the plaintiffs in the other racetrack cases, as the *Baschuk* and *Castellanos* plaintiffs paid fees to actively participate in events held by the defendants in much the same way plaintiff here participated in the high speed driving event. In *Baschuk,* the Second Department found that § 5–326 did not apply. And, in *Castellanos,* the Second Department held a release similar to the one in this case enforceable without discussion of § 5–326. As these cases are the most analogous to the present case, the Court finds that the plaintiff was not a "user" as that term is used in § 5–326, barring that statute's application to the present case.

Accordingly, for the reasons set forth above and in Magistrate Judge Heckman's Report and Recommendation, the Court

grants summary judgment in favor of defendants Cox, Petchell, Porsche Clubs, and Watkins Glen based on the waiver, and the Court denies summary judgment for defendants Mullane Mitsubishi ("Mullane") and Mitsubishi Motor Sales of America and Mitsubishi Motors America ("Mitsubishi").

The case is referred back to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION AND DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). All defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and defendants Petchell, Porsche Club of America Niagara Region, Inc., Porsche Club of America, Inc. ("PCA") and Watkins Glen International, Inc. ("Watkins Glen") have moved for leave to amend their answers to assert the affirmative defense of "release." For the following reasons, it is recommended that the summary judgment motions of defendants Cox, Petchell, PCA and Watkins Glen be granted, and the summary judgment motions of defendants Mullane Auto Center, Inc., d/b/a Mullane Mitsubishi ("Mullane"), Mitsubishi Motor Sales of America, Inc. and Mitsubishi Motors America, Inc. ("Mitsubishi") be denied. The motion of defendants Petchell, PCA and Watkins Glen for leave to amend their answer is granted.

### *BACKGROUND*

On March 12, 1992, plaintiffs brought an action in New York State Supreme Court against defendants Cox, Petchell and PCA seeking damages for personal injuries, loss of consortium and loss of property as a result of a collision between an automobile driven by plaintiff Leslie ("Mimi") Lux, and an automobile driven by defendant Barbara Cox. The

---

1. With respect to all other objections raised by the parties, the Court fully adopts Magistrate

Judge Heckman's findings and does not find further elaboration necessary.

collision took place on June 11, 1991, at the Watkins Glen International Race Course in Watkins Glen, New York, during a "Drivers' School" program sponsored by PCA. At the time of the collision, defendant Daniel Petchell was acting as Ms. Cox's driving instructor, and was seated in the passenger seat of Ms. Cox's car (*see* "General Pleadings Chronology," Ex. 1).

Subsequently, on May 18, 1993, plaintiffs commenced a second action in state court against Watkins Glen, Mullane, and Mitsubishi for negligence based on the same June 11, 1991 collision (*id.*, Ex. 4). Plaintiffs also sued Mullane and Mitsubishi under theories of products liability, strict liability and breach of warranty (*id.*). The two actions were consolidated by order of Hon. Norman E. Joslin, dated October 8, 1993 (*id.*, Ex. 10).

On May 10, 1996, after substantial discovery had taken place in the consolidated state court action, defendant Cox filed in the United States Bankruptcy Court for the Southern District of California a petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* On July 26, 1996, upon notice filed by Mitsubishi, the case was removed to this court pursuant to 28 U.S.C. § 1452(a).[1]

The following facts are not in dispute. Both plaintiffs participated in PCA's 1991 Driver's School at Watkins Glen, as did defendant Cox. Plaintiff Leslie Lux indicated on her application that she had "Extensive high speed Driver's School Experience," having participated in 8 events, 4 of which were held at Watkins Glen (Ex. Q, attached to Item 10). The fee for the two-day program was $150.00 (*id.*).

The program participants were required to sign a document entitled "Release and Waiver of Liability, Assumption of Risk and In-demnity Agreement" (the "Agreement") (*id.*, Ex. X). Ms. Lux and Ms. Cox signed the Agreement[2] on both days of the event, June 10 and 11, 1991. The Agreement provided:

> IN CONSIDERATION of being permitted to compete, officiate, observe, work for, or participate in the EVENT(S) ..., EACH OF THE UNDERSIGNED, for himself, his personal representatives, heirs and next of kin:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> 2. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoters, participants, racing associations, sanctioning organizations or any subdivision thereof, track operators, track owners, officials, car owners, drivers, pit crews, rescue personnel, any persons in any RESTRICTED AREA, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the EVENT(S), premises and event inspectors, surveyors, underwriters, consultants and others who give recommendations or directions, or instructions or engage in risk evaluation or loss control activities regarding the premises or EVENT(S) and each of them, their directors, officers, agents, and employees, all for the purposes herein referred to as "Releasees," FROM ALL LIABILITY TO THE UNDERSIGNED, his personal representatives, assigns, heirs, and next of kin FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFORE ON ACCOUNT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.
>
> 3. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the Releasees and each of them

---

1. 28 U.S.C. § 1452(a) provides:

   A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

   28 U.S.C. § 1334 grants the district courts "original and exclusive jurisdiction of all cases under title 11 ...," 28 U.S.C. § 1334(a), and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

2. The language of the Agreement signed by Ms. Lux and Ms. Cox on June 10, 1991 differed slightly from the language of the Agreement signed by Ms. Lux and Ms. Cox on June 11, 1991 (the day of the collision). None of the parties have attached any significance to this difference in language.

FROM ANY LOSS, LIABILITY, DAM-AGE, OR COST they may incur arising out of or related to the EVENT(S) WHETHER CAUSED BY THE NEGLI-GENCE OF THE RELEASEES OR OTHERWISE.

4. HEREBY ASSUMES FULL RE-SPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROP-ERTY DAMAGE arising out of or related to the EVENT(S) whether caused by the NEGLIGENCE OF RELEASEES or oth-erwise.

5. HEREBY acknowledges that THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or prop-erty damage. . . .

(*Id.*).

On the morning of June 11, 1991, at ap-proximately 9:45 a.m., Ms. Lux and Ms. Cox were driving on the Watkins Glen race course, along with several other cars, as part of the "white" (intermediate) group of PCA Drivers' School participants. Plaintiffs had both enrolled in the program as drivers in the "black" (advanced) group, driving sepa-rate cars, but Ms. Lux obtained permission from PCA's program director Mike Bohan to drive with the "white" group on the second day of the program so that she and Mr. Lux could share driving time using just one car. Ms. Lux was driving solo in her 1988 Porsche 944S, and Ms. Cox was driving her 1991 Mitsubishi 3000GT, with Instructor David Petchell in the passenger seat. As she was negotiating Turn 1 of the course,[3] Ms. Cox experienced "brake loss" (*see* Item 10, Ex. R). Her car collided with the car driven by Ms. Lux.

Defendants Cox, Petchell, PCA and Wat-kins Glen move for summary judgment on the ground that the express language in the Agreement signed by plaintiffs releases those defendants from liability for all claims al-leged in this lawsuit. All of the defendants move for summary judgment on the ground that plaintiffs assumed the risks inherent in the dangerous activity of high-performance automobile driving school.

Plaintiffs oppose the motions on the ground that the release language contained in the Agreement is unenforceable as against public policy, as provided in New York Gen-eral Obligations Law § 5–326. Plaintiffs also contend that defendants Petchell, PCA and Watkins Glen waived the affirmative defense of "release" by failing to plead it in their answer. Plaintiffs also contend that they did not assume the risk of brake loss, which allegedly caused the collision, and that as-sumption of risk is unavailable as a defense in an action based on strict products liability.

Each of these arguments is discussed in turn below.

## DISCUSSION

### I. Motion to Amend the Answer.

■ As an initial matter, the court will address the motion of defendants Petchell, PCA and Watkins Glen for leave to amend their answers to include the affirmative de-fense of "release." Under Fed.R.Civ.P. 15(a), leave to amend the pleadings "shall be freely given when justice so requires." The rule in the Second Circuit is that a party should be granted leave to amend its plead-ings in the absence of a showing by the nonmovant of prejudice or bad faith. *See Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir.1993); *White–Ruiz v. City of New York*, 1996 WL 744892, at *2 (S.D.N.Y. December 31, 1996) (holding that Rule 15 analysis applies when defendants seek belat-edly to assert a waivable affirmative defense; also noting defenses listed in "automatic waiver" provision of Fed.R.Civ.P. 12(h)).

■ In determining what constitutes "prejudice," courts generally consider wheth-er the assertion of the new claim would require the opponent to expend significant additional resources to conduct discovery and prepare for trial, significantly delay the reso-lution of the dispute, or prevent the plaintiff from bringing a timely action in another

---

**3.** Turn 1, also referred to as "the Ninety," is described in the PCA Drivers' School informa-tional materials as "probably the most important corner on track" (Item 10, Ex. T).

jurisdiction. *See, e.g., Block, supra; Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir.1986); *Herbert Construction Co., Inc. v. Titan Indemnity Co.,* 1996 WL 254859, at *2 (S.D.N.Y. May 15, 1996). "Mere delay" in asserting the defense, "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981).

■ There has been no showing in this case that allowing defendants to assert the defense of "release" at this stage of the litigation would require plaintiffs to expend significant additional resources to conduct discovery, would unnecessarily delay the suit, or would somehow prevent plaintiffs from bringing a timely action in another jurisdiction. Plaintiffs have been on notice since approximately April, 1992, upon receipt of service of defendant Cox's answer to the state court complaint, that the defense of release would be raised in this case, and would be a central issue. *See Fireman's Fund Insurance Co. v. New York Mechanical General, Inc.,* 712 F.Supp. 312, 314 (W.D.N.Y.1989) (where enforceability of release clause may be central to the case, and issue had been raised by codefendant's pleadings, plaintiffs could not show prejudice from granting defendant leave to amend answer to assert affirmative defense of release).

Accordingly, the motion of defendants Petchell, PCA and Watkins Glen for leave to amend their answers to assert the affirmative defense of "release" is granted. The amended pleadings shall be served and filed in accordance with the Federal and Local Rules of Civil Procedure, within 10 days from the date of entry of this order.

## II. Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A factual dispute is material only if it might affect the outcome of the suit under governing law. *Anderson, supra; see also Mc Duffie v. Watkins Glen International, Inc.,* 833 F.Supp. 197, 200 (W.D.N.Y.1993).

## A. Release.

Defendants Cox, Petchell, PCA and Watkins Glen contend that, as "Releasees" under the Agreement, they are entitled to summary judgment dismissing the complaint against them. Plaintiffs do not directly dispute the principle that, "[w]here the language of the exculpatory agreement expresses in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant's negligence, the agreement will be enforced." *Lago v. Krollage,* 78 N.Y.2d 95, 99–100, 571 N.Y.S.2d 689, 575 N.E.2d 107 (1991). Rather, plaintiffs contend that the purported release of liability contained in the Agreement is void under New York General Obligations Law § 5–326, which provides:

> Every covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner or operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable.

N.Y.Gen.Oblig.L. § 5–326.

■ It is clear that the Watkins Glen race course is a "place of amusement or recreation" which is covered by the statute. *See Mc Duffie v. Watkins Glen International, Inc., supra,* 833 F.Supp. at 202; *see also*

*Thomas v. Dundee Raceway Park, Inc.*, 882 F.Supp. 34, 35 (N.D.N.Y.1995). As explained in *Mc Duffie*, the legislative history of § 5–326 establishes that "it was a consumer protection measure based upon an assessment that members of the general public patronizing proprietary recreational and amusement facilities are commonly either entirely unaware of the existence of exculpatory clauses in admission tickets or membership applications or are unappreciative of the legal consequences thereof." *Id.* (quoting *Owen v. R.J.S. Safety Equip., Inc.*, 169 A.D.2d 150, 156, 572 N.Y.S.2d 390 (3rd Dep't 1991), *aff'd*, 79 N.Y.2d 967, 582 N.Y.S.2d 998, 591 N.E.2d 1184 (1992)).

Thus, the courts have focused on the status of the plaintiff at the time the alleged injury occurred to determine whether he or she was a "user" of the facility within the meaning of § 5–326, see, e.g., *Gilkeson v. Five Mile Point Speedway Inc.*, 232 A.D.2d 960, 648 N.Y.S.2d 844 (3rd Dept.1996) (plaintiff was spectator in pit area of speedway); *Green v. WLS Promotions, Inc.*, 132 A.D.2d 521, 521, 517 N.Y.S.2d 537 (2nd Dep't 1987) (plaintiff was patron of racetrack who paid admission fee), appeal dismissed, 70 N.Y.2d 951, 524 N.Y.S.2d 678, 519 N.E.2d 624 (1988); *Miranda v. Hampton Auto Raceway, Inc.*, 130 A.D.2d 558, 515 N.Y.S.2d 291, 292 (2nd Dep't 1987) (plaintiff paid fee to use racetrack, and was injured during that use); Gaskey v. Vollertsen, 110 A.D.2d 1066, 1066–67, 488 N.Y.S.2d 922 (4th Dep't 1985) (plaintiff was spectator in pit area of Lancaster Speedway), or a "participant" in the event and not entitled to the statute's consumer protection benefit. *See Mc Duffie, supra* (plaintiff was professional race car driver) (citing *Lago v. Krollage*, 157 A.D.2d 49, 554 N.Y.S.2d 633 (2nd Dep't 1990) (plaintiff was mechanic working in pits at Islip Speedway)), aff'd. on other grounds, 78 N.Y.2d 95, 571 N.Y.S.2d 689, 575 N.E.2d 107 (1991); see also *Howell v. Dundee Fair Ass'n*, 73 N.Y.2d 804, 806, 537 N.Y.S.2d 27, 533 N.E.2d 1056 (1988) (plaintiff was volunteer fireman responding to emergency at racetrack).

In this case, the record is clear that plaintiffs were participants in the PCA Drivers' School program, rather than spectators or patrons of the Watkins Glen race course. The fees paid by plaintiffs to PCA were for the purpose of registration in the program, not for admission to the race course. As frequent participants in the Drivers' School program, plaintiffs cannot be said to belong to a class of consumers "unaware of the existence of exculpatory clauses" in the releases they were required to sign, or "unappreciative of the legal consequences thereof." *Owen v. R.J.S. Safety Equip., Inc., supra.*

In addition, New York courts have found § 5–326 inapplicable where the plaintiff was injured while participating in instructional, rather than recreational, sporting activities, and the fee paid by plaintiff was "tuition ... for a course of instruction" as opposed to "the use fee for recreational facilities contemplated by the statute." *Baschuk v. Diver's Way Scuba, Inc.*, 209 A.D.2d 369, 370, 618 N.Y.S.2d 428, 430 (2nd Dep't 1994); *see also Chieco v. Paramarketing, Inc.*, 228 A.D.2d 462, 463, 643 N.Y.S.2d 668, 669–70 (2nd Dep't 1996) (plaintiff injured during paragliding lesson). It is beyond dispute in this case that the PCA Drivers' School is an instructional sporting activity. The application form filled out by Ms. Lux clearly states that the program includes "track time" and "[c]lass room training" with "[q]ualified instructors for all run groups" (Item 10, Ex. Q). The informational materials sent to plaintiffs upon their enrollment identify the program as "The Niagara Region Inc. PCA Driver Education Program" (*id.*, Ex. T). These materials include an article written by Classroom Instructor Walt Leising, which begins: "The purpose of this article is to serve as a uniform baseline for students and instructors participating in PCA driver education events at Watkins Glen" (*id.*). Program Director Michael Bohan testified at his deposition in this case that the PCA program is a "driver education program" which teaches drivers "how to increase their driving skills" such as "[b]raking, car control, understanding of what is involved in the dynamics of a car on a race track" (*id.*, Ex. V, p. 182).

Plaintiffs contend that N.Y.Gen.Oblig.L. § 5–326 should apply to void the releases because they paid a fee to PCA to participate in the program, and PCA in turn paid Wat-

kins Glen a fee of $3000.00 for use of the race course. However, there is no evidence in the record to show what portion of the $150.00 fee paid by plaintiffs and the other participants was designated for payment to Watkins Glen to defray the cost of using the race course for the Drivers' School program, and what portion of the fee was designated to defray any other costs associated with the program. Accordingly, I find that the fee paid to PCA is more analogous to "the tuition fee paid by the plaintiff for a course of instruction" in the *Baschuk* case cited above, than "to the use fee for recreational facilities contemplated by" § 5–326. *Baschuk v. Diver's Way Scuba, Inc., supra.*

Plaintiffs "assert[ ] no basis other than the provisions of General Obligations Law § 5–326 upon which to deny enforcement of [the releases] as against [PCA] or the other entities identified as the beneficiaries thereof." *Lago v. Krollage, supra,* 78 N.Y.2d at 101, 571 N.Y.S.2d 689, 575 N.E.2d 107 (citing *Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979), and *Ciofalo v. Vic Tanney Gyms,* 10 N.Y.2d 294, 220 N.Y.S.2d 962, 177 N.E.2d 925 (1961)). Since the language of the exculpatory agreement expresses in unequivocal terms the intention of the parties to relieve "promoters, participants, racing associations, sanctioning organizations . . ., track operators, track owners, officials, car owners, drivers, . . . sponsors, . . . [and] owners and lessees of premises used to conduct the EVENT(S)" from all liability for loss or damage on account of personal injury or property damage arising out of or related to the event, "WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE . . .," (Item 10, Ex. X), the releases should be given full force and effect. *See Lago, supra* at 99–100, 571 N.Y.S.2d 689, 575 N.E.2d 107; *see also Baschuk, supra,* 209 A.D.2d at 370, 618 N.Y.S.2d at 429; *McDuffie, supra,* 833 F.Supp. at 202.

Accordingly, summary judgment is appropriate in favor of defendants Cox, Porsche

Club of America Niagara Region, Inc., Porsche Club of America, Inc. and Watkins Glen International, Inc., on the ground that plaintiffs released those defendants from liability for the damages claimed in this lawsuit.

## B. Assumption of Risk.

All defendants assert that they are entitled to summary judgment dismissing the case because plaintiffs assumed the risks of injury when they participated in the Drivers' School with full knowledge of the dangers inherent in the activity of driving high-performance cars at high speeds on the Watkins Glen race course. Plaintiffs respond that the alleged causes of the collision—sudden and complete brake failure, defective design and manufacture, and failure to discover or remedy the defect—are not reasonably foreseeable consequences of participating in the Drivers' School program, and that assumption of risk is unavailable as a defense to a claim based on strict products liability.

■ Since New York's adoption of a comparative negligence law in 1975, codified at CPLR 1411,[4] assumption of risk is no longer a complete bar to recovery, except in cases involving "express" or "primary" assumption of risk. *See Turcotte v. Fell,* 68 N.Y.2d 432, 510 N.Y.S.2d 49, 502 N.E.2d 964 (1986); *Arbegast v. Board of Educ.,* 65 N.Y.2d 161, 490 N.Y.S.2d 751, 480 N.E.2d 365 (1985); *Integrated Waste Services, Inc. v. Akzo Nobel Salt, Inc.,* 113 F.3d 296, 300 (2d Cir.1997). The availability of the assumption of risk defense in New York is explained by the Appellate Division in *Lamey v. Foley,* 188 A.D.2d 157, 594 N.Y.S.2d 490 (4th Dept. 1993), as follows:

Care must be taken to distinguish between two distinct doctrines of assumption of risk. The first is embraced within the CPLR [§ 1411] concept of "culpable conduct attributable to the claimant." It is akin to comparative negligence; it does not bar recovery, but diminishes recovery in

---

4. New York CPLR § 1411 provides:

In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages.

the proportion to which it contributed to the injuries. We are here concerned with another category of assumption of risk, sometimes called "primary" assumption of risk. If applicable, the doctrine of primary assumption of risk is not a measure of plaintiff's comparative fault, but a measure of the defendant's duty of care. Primary assumption of risk eliminates or reduces the tort-feasor's duty of care to the plaintiff and, in the former case, constitutes a complete bar to recovery, notwithstanding CPLR [§ 1411].

*Id.,* 188 A.D.2d at 162–63, 594 N.Y.S.2d at 494 (citations omitted).

The defense of "primary assumption of risk" is frequently raised in case where a plaintiff claims injury arising out of participation in a sporting or entertainment event or activity, whether amateur or professional. *Id.* (citing cases). A plaintiff's primary assumption of risk may be either express or implied. *Compare Arbegast v. Board of Educ., supra,* 65 N.Y.2d at 162, 490 N.Y.S.2d 751, 480 N.E.2d 365, *with Maddox v. City of New York,* 66 N.Y.2d 270, 276, 496 N.Y.S.2d 726, 487 N.E.2d 553 (1985); *see also Lamey, supra,* 188 A.D.2d at 163, 594 N.Y.S.2d at 494.

The availability of the assumption of risk defense to a claim for damages arising out of a plaintiff's participation in a sporting or recreational activity depends on the nature and scope of the participant's awareness and consent. *Lamey, supra; see also Turcotte v. Fell, supra,* 68 N.Y.2d at 439, 510 N.Y.S.2d 49, 502 N.E.2d 964. "As a general rule, participants properly may be held to have consented, by their participation, to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation." *Turcotte, supra* (citing *Maddox v. City of New York, supra,* 66 N.Y.2d at 277–278, 496 N.Y.S.2d 726, 487 N.E.2d 553). On the other hand, the defendant generally has a duty to exercise reasonable care to protect athletic participants from "unassumed, concealed or unreasonably increased risks." *Benitez v. New York City Bd. of Educ.,* 73 N.Y.2d 650, 658, 543 N.Y.S.2d 29, 541 N.E.2d 29 (1989).

To establish the assumption of risk defense, the defendant must show that the plaintiff was aware of the defective or dangerous condition and the resultant risk, although it is not necessary to demonstrate that the plaintiff foresaw the exact manner in which her injury occurred. *Maddox, supra,* 66 N.Y.2d at 278, 496 N.Y.S.2d 726, 487 N.E.2d 553. "Whether it can be concluded that a plaintiff made an informed estimate of the risks involved in an activity before deciding to participate depends on the openness and obviousness of the risk, plaintiff's background, skill, and experience, plaintiff's own conduct under the circumstances, and the nature of defendant's conduct." *Lamey, supra,* 188 A.D.2d at 164, 594 N.Y.S.2d at 495; *see also Benitez, supra,* 73 N.Y.S.2d at 657–659, 543 N.Y.S.2d 29, 541 N.E.2d 29; *Turcotte, supra,* 68 N.Y.2d at 440, 442, 510 N.Y.S.2d 49, 502 N.E.2d 964; *Maddox, supra,* 66 N.Y.2d at 277–278, 496 N.Y.S.2d 726, 487 N.E.2d 553. As stated in the *Maddox* case, awareness of the risk assumed is "to be assessed against the background of the skill and experience of the particular plaintiff, and in that assessment a higher degree of awareness will be imputed to a professional than to one with less than professional experience in the particular sport." *Maddox v. City of New York, supra,* 66 N.Y.2d 270 at 278, 496 N.Y.S.2d 726, 487 N.E.2d 553 (citations omitted).

A plaintiff will not be held to have assumed those risks that are not inherent, *i.e.,* not "ordinary and necessary" in the sport. *Cole v. New York Racing Assn.,* 24 A.D.2d 993, 994, 266 N.Y.S.2d 267 (2nd Dep't 1965), *aff'd,* 17 N.Y.2d 761, 270 N.Y.S.2d 421, 217 N.E.2d 144 (1966), *quoted in Turcotte v. Fell, supra,* 68 N.Y.2d at 443, 510 N.Y.S.2d 49, 502 N.E.2d 964. This is "[p]erhaps the most important factor" in the assumption of risk analysis. *Lamey, supra,* 188 A.D.2d at 164, 594 N.Y.S.2d at 495; *see also Morgan v. State of New York,* 90 N.Y.2d 471, 484, 662 N.Y.S.2d 421, 685 N.E.2d 202 (1997) ("inherency is the *sine qua non* " of the assumption of risk analysis). As stated by the New York Court of Appeals in *Morgan:*

[B]y engaging in a sport or recreational activity, a participant consents to those

commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation.... [A]ssumption of risk .... serves to define the standard of care under which a defendant's duty is defined and circumscribed.... Therefore, in assessing whether a defendant has violated a duty of care within the genre of tort-sports activities and their inherent risks, the applicable standard should include whether the conditions caused by the defendants' negligence are "unique and created a dangerous condition over and above the usual dangers that are inherent in the sport."

*Morgan v. State of New York, supra,* 90 N.Y.2d at 484–85, 662 N.Y.S.2d 421, 685 N.E.2d 202 (*quoting* Prosser and Keeton, *Torts* § 68, at 496–497 (5th ed.), and *Owen v. R.J.S. Safety Equip., supra,* 79 N.Y.2d at 970, 582 N.Y.S.2d 998, 591 N.E.2d 1184)).

In conducting this analysis, the court may consider such factors as the accepted and applicable rules or standards of the sport, published guidelines, evidence of common usage, conditions that exist at similar facilities, proof of prior accidents at the same place under substantially similar circumstances, or the absence of prior accidents, or other relevant factors. *See Turcotte v. Fell, supra* at 440–443, 510 N.Y.S.2d 49, 502 N.E.2d 964; *Lamey, supra; Verro v. New York Racing Association, Inc.,* 142 A.D.2d 396, 400–01, 536 N.Y.S.2d 262, 265–66 (3rd Dep't), *appeal denied,* 74 N.Y.2d 611, 546 N.Y.S.2d 556, 545 N.E.2d 870 (1989).

Generally, the issue of assumption of risk is a question of fact for the jury. *Maddox v. City of New York, supra,* 66 N.Y.2d at 279, 496 N.Y.S.2d 726, 487 N.E.2d 553; *see also Benitez v. New York City Bd. of Educ., supra,* 73 N.Y.2d at 659, 543 N.Y.S.2d 29, 541 N.E.2d 29. However, "where only one conclusion may be drawn from the established facts," *Derdiarian v. Felix Contr. Co.,* 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980), the issue may be decided as a matter of law. *Benitez, supra.*

Applying these standards to this case, I find that a reasonable juror could draw more than one conclusion from the factual issues presented as to whether the defendants created or contributed to conditions over and above the usual dangers inherent in the activity of high-performance automobile driving instruction. It can hardly be disputed (although plaintiffs have made the attempt) that brake loss is a risk inherent in that activity. The informational materials distributed by PCA prior to the event advised that "brakes are an area of consistent stress, especially for intermediate and advanced drivers who tend to use their brakes hard. Vigorous use of power, tires, and brakes make it possible to overwork the brakes on this course." The materials explained that a problem commonly occurs when, after a run, vapor from hot brake pads condenses on the brake rotors. Then, during the next run, the brakes thump and the steering wheel shakes when the brakes are applied. "Although the problem often goes away with use, it may also lead to permanent damage and warping of the rotors" (Item 10, Ex. T).

In addition, there is no genuine dispute that Ms. Lux had considerable race car driving experience, having participated in at least eight previous drivers' school programs. Four of those previous programs took place at the Watkins Glen International Race Course, famous for its "irregular configuration with straightaways, turns in each direction, and combination turns ...," *Mc Duffie v. Watkins Glen International, Inc., supra,* 833 F.Supp. at 198, and presenting risks " 'open and obvious' to any driver who had taken a practice lap." *Id.* at 201.

However, plaintiffs claim that the brake loss and the resulting collision were caused by defendants' conduct in the defective design, manufacture and/or negligent inspection of the brakes on Ms. Cox's Mitsubishi 3000GT, presenting dangerous conditions "over and above the usual dangers that are inherent in the sport." *Owen v. R.J.S. Safety Equip., supra,* 79 N.Y.2d at 970, 582 N.Y.S.2d 998, 591 N.E.2d 1184. To support this claim, plaintiffs have submitted the affidavit of Paul Hacker, a professional racing car test driver, instructor and safety consultant retained by plaintiffs to provide expert witness testimony in this case (Item 28).

Mr. Hacker states that, in his opinion, Mitsubishi's failure to provide "high quality brake pads and fluid commensurate with the high performance automobile" sold to Ms. Cox "caused and/or contributed to the brake loss and accident" (*id.*, ¶ 5). Mr. Hacker also states that Mullane and PCA "contributed to the brake failure and accident" by failing to properly inspect Ms. Cox's car prior to and during the Drivers' School program (*id.*, ¶¶ 6, 7), and that Ms. Cox and Mr. Petchell were negligent in failing to take "necessary and proper evasive actions" (*id.*, ¶ 8).

Defendants contend that Mr. Hacker's affidavit and deposition testimony, along with the deposition testimony of defendants Cox and Petchell, clearly establish that Ms. Cox's car suffered "brake fade," not "brake loss." According to defendants, brake fade "is not an uncommon phenomenon of high performance driving be it a race or high performance track event" (Item 33 (quoting Item 28, Hacker Aff., ¶ 9)). Defendants claim that the brake fade was caused by high speed driving and hard braking, not as a result of any alleged product defect or negligent inspection (*see, e.g.*, Item 20, Goldblatt Aff., ¶ 7; Item 22, Schule Aff., ¶ 6).

This presents a classic dispute of material fact which cannot be resolved on a motion for summary judgment. *See Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir.1994) ("[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them."). Mr. Hacker's sworn statements in both his affidavit and deposition testimony clearly raise material factual issues as to whether Ms. Cox's car suffered "complete loss of brake function" (Item 28, ¶ 9), whether the failure of the brakes resulted from defective components or negligent inspection, whether complete brake failure is an inherent risk of participating in a racing drivers' school, and several other issues precluding summary judgment in favor of defendants on the ground of assumption of risk.

As in the *Morgan* case, "[t]he line to be drawn and applied in this case is close, but plaintiffs have the better of it." *Morgan v.*

*State of New York, supra*, 90 N.Y.2d at 488, 662 N.Y.S.2d 421, 685 N.E.2d 202. In *Morgan*, the plaintiff was injured while playing tennis at the defendant's indoor facility when he snagged his foot in a torn vinyl hem at the bottom of a net dividing the tennis courts. The Court of Appeals found that, while nets separating indoor tennis courts are inherently part of the playing and participation of the sport at such facilities, "a torn or allegedly damaged or dangerous net—or other safety feature—is by its nature not automatically an inherent risk of a sport as a matter of law for summary judgment purposes. Rather, it may qualify as and constitute an allegedly negligent condition occurring in the ordinary course of any property's maintenance and may implicate typical comparative negligence principles." *Id.* Thus, the court found that because a torn divider net "is not an 'inherent' part of the game of tennis in and of itself, [the plaintiff] should not be deemed legally to have assumed the risk of injuries caused by his tripping over it." *Id.*

By analogy, defectively designed and negligently maintained brake components cannot be said as a matter of law to be an "inherent" part of the activity of instructional race car driving. There is no evidence in the record of explicit warnings, common usage, prior accidents (or lack thereof), or other proof to show that the conditions alleged to have caused the collision were "automatically" open and obvious to a student driver with Ms. Lux's experience. Instead, on this record, a rational juror could conceivably find those conditions to have presented unique circumstances "over and above the usual dangers that are inherent in the sport." *Owen v. R.J.S. Safety Equip., supra*, 79 N.Y.2d at 970, 582 N.Y.S.2d 998, 591 N.E.2d 1184.

Taking a new approach in its reply papers, Mitsubishi challenges the admissibility of Mr. Hacker's opinion. Mitsubishi claims that Mr. Hacker's opinion should be rejected by this court because the opinion is based on flawed methodology and is not supported by reliable data, and because Mr. Hacker has no specific training or education with respect to the design, manufacture and marketing of automobile brake components.

Defendants' evidentiary challenge is premature. For one thing, Mitsubishi claims that Mr. Hacker's opinion is flawed because he failed to examine sample brake system components, engineering drawings, specifications, advertising brochures, and other materials necessary to establish a reliable foundation. However, these materials are subject to a pending motion to compel discovery, filed by plaintiffs on April 20, 1998 (the day before oral argument was heard on the summary judgment motions), and scheduled to be heard by this court on May 19, 1998 (*see* Item 35, Ex. A).

For another thing, while Mr. Hacker's affidavit contains a statement of his purported qualifications as an expert witness (*see* Item 28, ¶ 2), and a list of the materials he reviewed in formulating his opinion as to the cause of the June 11, 1991 collision (*id.*, ¶ 3), the record presented on this motion does not contain a copy of Mr. Hacker's expert witness report. *See* Fed.R.Civ.P. 26(a)(2)(B). In any event, plaintiffs' counsel has represented to this court that Mr. Hacker's expert report will be supplemented upon receipt and analysis of the materials sought in plaintiffs' pending motion to compel.

In addition, in most of the cases cited by Mitsubishi in support of its challenge to Mr. Hacker's opinion, the court made its ruling on expert witness qualification or admissibility of expert opinion testimony at a considerably more advanced stage of the litigation. *See, e.g., Bogosian v. Mercedes–Benz of North America, Inc.,* 104 F.3d 472, 476 (1st Cir.1997) (ruling made at trial, after extensive *voir dire* ); *Cummins v. Lyle Industries,* 93 F.3d 362, 366 (7th Cir.1996) (ruling made after extensive hearings on motion *in limine* during trial); *Meyerhoff v. Michelin Tire Corp.,* 70 F.3d 1175, 1182 (10th Cir.1995) (ruling made during trial); *Tokio Marine & Fire Insurance Co.,* Ltd., 958 F.2d 1169, 1173–74 (1st Cir.1992) (ruling made at trial); *Diviero v. Uniroyal Goodrich Tire Co.,* 919 F.Supp. 1353, 1356 (D.Ariz.1996) (ruling made after Fed.R.Evid. 104(a) hearing on motion *in limine* ), *aff'd,* 114 F.3d 851 (9th Cir.1997); *Smith v. Ford Motor Co.,* 882 F.Supp. 770, 771 (N.D.Ind.1995) (ruling made after Fed.R.Evid. 104(a) hearing). In this case, the request for a determination of admissibility and expert qualifications was made by Mitsubishi in its reply to plaintiffs' response to the summary judgment motions. No hearing on the issue has been held, and no request for a hearing has been made. Several important discovery issues remain unresolved, and substantial discovery still needs to be conducted in the case (*see* Items 35–37). Most of the unresolved discovery issues involve information related to Mitsubishi's complaints about the lack of foundation for Mr. Hacker's opinion.

Accordingly, defendants are not entitled to summary judgment on the ground of assumption of risk.

## CONCLUSION

For the foregoing reasons, it is recommended that the summary judgment motions of defendants Cox (**Item 13**), Petchell, PCA and Watkins Glen (**Item 10**) be granted, and that the complaint against those defendants be dismissed. It is also recommended that the summary judgment motions of defendants Mullane (**Item 22**) and Mitsubishi (**Item 20**) be denied.

The motion of defendants Petchell, PCA and Watkins Glen (**Item 18**)[5] for leave to amend their answer is granted.

**5.** Item 18 was filed as a "Reply Affirmation." The request for leave to amend the answer is contained therein.